**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NATAICENIA POBLANO, *on behalf of herself,*
*FLSA Collective Plaintiffs, and the Class,*

                            Plaintiff,

                  v.

LA TIENDITA DONA FIDE CORP
        d/b/a LA TIENDITA DOÑA FIDE,
LA TIENDITA DONA FIDE 2 CORP.
        d/b/a LA TIENDITA DOÑA FIDE 2, and
ISIDRO HUERO SERRANO

                            Defendants.

---

**Case No:**

**CLASS AND COLLECTIVE ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiff, NATAICENIA POBLANO ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, (1) LA TIENDITA DONA FIDE CORP d/b/a LA TIENDITA DOÑA FIDE, (2) LA TIENDITA DONA FIDE 2 CORP. d/b/a LA TIENDITA DOÑA FIDE 2 (together the "Corporate Defendants"), and (3) ISIDRO HUERO SERRANO (the "Individual Defendant" or "Individual Defendant SERRANO" and collectively with the Corporate Defendants, the "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that she and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to a policy of time-shaving, (2) unpaid overtime wages due to improper straight rate compensation, (3) liquidated damages, and (4) attorneys' fees and costs.

2.      Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), she and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to a policy of time-shaving, (2) unpaid overtime wages due to improper straight rate compensation, (3) unpaid minimum wages, (4) unpaid spread of hour premiums, (5) liquidated damages, (6) statutory penalties due to WTPA violations, and (7) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

5.      Plaintiff, for all relevant time periods, was a resident of Bronx County, New York.

6.      Corporate Defendant LA TIENDITA DONA FIDE CORP is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and address for service of process both located at 2210 Westchester Avenue, Bronx, NY 10462.

7.     Corporate Defendant LA TIENDITA DONA FIDE 2 CORP. is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and address for process of service both located at 2589 Saint Raymond Avenue, Bronx, NY 10461.

8.     Individual Defendant ISIDRO HUERO SERRANO is the owner and principal of all Corporate Defendants. ISIDRO HUERO SERRANO exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and Class Members. ISIDRO HUERO SERRANO exercises the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and Class Members. At all times, employees of any of Defendants' stores could complain to ISIDRO HUERO SERRANO directly regarding any of the terms of their employments, and ISIDRO HUERO SERRANO would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules and compensation, or terminating or hiring such employees. At all relevant times, employees could make accommodation requests to ISIDRO HUERO SERRANO, including accommodations related to disabilities and pregnancies. At all relevant times, ISIDRO HUERO SERRANO exercised functional control over the business, financial, and logistical operations of each of the Corporate Defendants.

9.     Defendants collectively own and operate a two (2) grocery store enterprise which operates at the following locations:

   (a)  2210 Westchester Avenue, Bronx, NY 10462 ("LA TIENDITA DOÑA FIDE");

   (b)  2589 Saint Raymond Avenue, Bronx, NY 10461 ("LA TIENDITA DOÑA FIDE 2");

(together, the "Grocery Stores").

10.    The Grocery Stores are operated by Defendants as a single integrated enterprise. Specifically, the Grocery Stores are engaged in related activities, share common ownership and management, and have a common business purpose. The Grocery Stores are commonly owned through the control of Individual Defendant ISIDRO HUERO SERRANO, who holds an executive position in both entities and has the power to make binding decisions for the entities.

(a) The two Grocery Stores both: are Mexican themed, share the same name, have similar logos, and share a similar inventory of Mexican products, groceries, fruits, vegetables, and beers. *See* **Exhibit A**.

(b) At all relevant times, Defendants regularly required Plaintiff and other employees to work at both Grocery Stores.

(c) At all relevant times, Defendants utilized centralized labor, scheduling, and payroll systems which allowed Defendants' employees to work at both of Defendants' Grocery Stores and also allowed Defendants to pay them for their work performed at both Grocery Stores in one combined payment. At all relevant times, Defendants did not use a digital timeclock system, and instead paid employees for only their scheduled hours which required combining employees' hours from the schedules of both Grocery Stores.

(d) Both Grocery Stores are managed by Individual Defendant SERRANO. Throughout Plaintiff's employment at both Grocery Stores, Individual Defendant SERRANO regularly worked at both Grocery Stores, sometimes both in the same day, and supervised and monitored Defendants' employees. Plaintiff observed

Individual Defendant SERRANO managing a Grocery Store on most days she worked for Defendants.

(e) Defendants regularly transfer supplies and products between the two Grocery Stores.

11.     Defendants' Grocery Stores share: (i) common ownership by Individual Defendant SERRANO, (ii) common management by Individual Defendant SERRANO, (iii) an interrelation of operations as shown through the exchange of employees, supplies, and products between the two Grocery Stores, and (iv) centralized control of labor and payroll relations as shown through their exchange of employees between the two Grocery Stores and weekly compensation being combined with hours worked at both stores.

12.     Defendants' Grocery Stores share an adequate number of commonalities and purposes that clearly classifies them as a "single integrated enterprise".

13.     At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

14.     At all relevant times, the work performed by Plaintiff and Class Members was directly essential to the business operated by Defendants.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

15.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including cashiers, stockers, and porters, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

16.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions,

and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including their overtime premiums at one and a half times their regular rates for all hours worked over forty (40) in a workweek, due to Defendants' policies of (i) timeshaving and (ii) improper straight rate compensation. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

17.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

18.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including stockers, cashiers, and porters, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

19.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

20.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

21.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices by Defendants, as alleged herein, of (1) failure to pay regular and overtime wages due to timeshaving, (2) failure to pay overtime wages due to improper straight rate compensation, (3) failure to pay the prevailing New York State minimum wage, (4) failure to compensate spread of hours premiums, (5) failure to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law, and (6) failure to provide proper wage and hour statements, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices and procedures of Defendants.

22.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

23.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

24.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their

employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

25.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

    a)   Whether Defendants employed Plaintiff and Class Members within the meaning of the New York Labor Law;

    b)   What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

    c)   At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

    d)   Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

    e)   Whether Defendants compensated Plaintiff and Class Members for all hours worked;

    f)   Whether Defendants paid Plaintiff and Class Members their owed spread of hours premiums;

    g)   Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually thereafter, per requirements of the New York Labor Law;

h)  Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law;

i)  Whether Defendants paid Plaintiff and Class Members New York State minimum wage for all hours worked; and

j)  Whether Defendants properly compensated overtime premiums to Plaintiff and Class Members for their overtime hours worked under New York State law.

## STATEMENT OF FACTS

**i.  Plaintiff's Employment Background**

26.    In or around January 2023, Plaintiff was hired by Defendants to work as a Cashier/Stocker at both of Defendants' Grocery Stores.  Plaintiff's employment with Defendants ended in or around April 2024.

27.    Throughout her employment, Plaintiff was scheduled by Defendants to work six (6) days per week, for seven (7) to ten (10) hours per day, for a total of forty-two (42) to sixty (60) hours per week. Plaintiff worked either from 10:00 a.m. to 5:00 p.m. ("Day Shifts"), or from 12:00 p.m. to 9:00 p.m. or 10:00 p.m. ("Closing Shifts"). FLSA Collective Plaintiffs and Class Members were scheduled to work similar hours.

28.    Throughout her employment, Plaintiff was paid in cash by Defendants at an hourly rate of $12.50 for all hours worked at both Grocery Stores. At all relevant times, Defendants paid FLSA Collective Plaintiffs and Class Members at similar rates.

**ii.  Plaintiff's Unpaid Minimum Wages Claim**

29.    At all relevant times, Defendants improperly compensated Plaintiff and Class Members below the prevailing New York State minimum wage, in violation of the NYLL.

30.    As described above, Defendants compensated Plaintiff at an hourly rate of $12.50 for all hours worked. However, throughout the relevant period, the prevailing New York State minimum wage ranged from $15.00 (2023) to $16.00 (2024). Therefore, Defendants always failed to compensate Plaintiff at the prevailing minimum wages.

31.    At all relevant times, Defendants similarly failed to compensate FLSA Collective Plaintiffs and Class Members at the prevailing New York State minimum wages.

32.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to compensate Plaintiff and Class Members at the prevailing New York State minimum wage, in violation of the NYLL.

### iii.  Plaintiff's Improper Straight Rate Compensation Claim

33.    At all relevant times, Defendants improperly compensated Plaintiff, FLSA Collective Plaintiffs, and Class Members at straight time rates for all overtime hours they worked, in violation of the FLSA and the NYLL.

34.    Throughout her employment, Defendants compensated Plaintiff at an hourly rate of $12.50 for all hours worked, including overtime hours. However, the prevailing New York State minimum overtime rates during the relevant period ranged from $22.50 (2023) to $24.00 (2024). Therefore, Defendants failed to compensate Plaintiff at the proper overtime rates.

35.    At all relevant times, Defendants similarly failed to compensate FLSA Collective Plaintiffs' and Class Members' overtime hours worked at the proper overtime rates.

### iv.  Plaintiff's Timeshaving Claim

36.    At all relevant times, Defendants failed to compensate Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours they were required by Defendants to work due to a policy of timeshaving, in violation of the FLSA and the NYLL.

37.    At all relevant times, Defendants did not utilize a time-clock system or any other system to record employees' clock in and clock out times. Because Defendants didn't record employees' hours worked, Defendants only compensated employees for their scheduled hours rather than the amount of hours they actually worked.

38.    Throughout her employment, every time Plaintiff worked Day Shifts, Plaintiff was required by Defendants to perform additional work past the end of her scheduled end time, for up to two (2) hours. However, due to Defendants' refusal and failure to compensate hours worked outside of scheduled hours, Defendants failed to pay Plaintiff for all hours worked after her scheduled Day Shifts.

39.    Defendants similarly required FLSA Collective Plaintiffs and Class Members to perform work after their scheduled shifts had ended and failed to compensate them for such hours worked.

40.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to compensate Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours worked outside of their scheduled hours due to a policy of timeshaving, in violation of the FLSA and the NYLL.

**v.  Plaintiff's Unpaid Spread of Hours Premiums Claim**

41.    At all relevant times, Defendants failed to compensate Plaintiff and Class Members with all spread of hours premiums owed for all workdays with a spread of ten (10) or more hours, in violation of the NYLL.

42.    Throughout her employment, Plaintiff was often required to work ten or more hour workdays. Class Members were similarly required to work shifts resulting in ten (10) or more hour workdays.

43.     However, Defendants failed to pay Plaintiff and Class Members their owed spread of hours premiums for every workday with a spread of ten (10) or more hours.

**vi. Plaintiff's WTPA Violation Claims**

44.     At all relevant times, Plaintiff and Class Members never received a wage notice from Defendants. They also did not receive any wage statements from Defendants.

45.     In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

46.     Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with any wage statements.

47.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

48.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

49.    Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

50.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

51.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

52.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F., 820* N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

53.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, *3

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

(N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

54.       "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, *4 (S.D.N.Y. July 14, 2022)).

55.       Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

56.       Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay

their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

57.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

58.    Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

59.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A

worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

*Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993)

60.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

61.     Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

62.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

63.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

64.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

65.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

66.     At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

67.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their wages, including overtime, due to time-shaving.

68.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their proper overtime wages, due to improper straight rate compensation.

69.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

70.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper wages and overtime premiums, when Defendants knew or should have known such was due.

71.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

72.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

73.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages, overtime wages, and liquidated damages.

74.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

75.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

76.     At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

77.     Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of timeshaving.

78.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them the prevailing New York State minimum wages.

79.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them proper overtime wages due to improper straight rate compensation.

80.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them any spread of hour premium for all their shifts worked in excess of ten (10) hours.

81.     Defendants failed to properly notify Plaintiff and Class Members of their hourly pay rates and overtime rates, in direct violation of the New York Labor Law.

82.     Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law.

83.     Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

84.     Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their unpaid wages, unpaid minimum wages, unpaid overtime wages, unpaid spread of hours premiums, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs and disbursements of this action, pursuant to New York Labor Law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.      An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.      An award of unpaid overtime wages due to improper straight rate compensation, due under the FLSA and the NYLL;

d.      An award of unpaid wages, including overtime, due to a policy of timeshaving, due under the FLSA and the NYLL;

e.      An award of unpaid minimum wages, due under the NYLL;

f.      An award of unpaid spread of hours premiums, due under the NYLL;

g.      An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

h.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

i.      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

j.      An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

k.      Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

l.      Designation of this action as a class action pursuant to F.R.C.P. 23;

m.      Designation of Plaintiff as Representative of the Class; and

n.      Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated:  August 29, 2024                                    Respectfully submitted,
        New York, New York

                                                           **LEE LITIGATION GROUP, PLLC**
                                                           C.K. Lee (CL 4086)
                                                           Anne Seelig (AS 3976)
                                                           148 West 24th Street, 8th Floor
                                                           New York, NY 10011
                                                           Tel.: 212-465-1188
                                                           Fax: 212-465-1181

                                                           *Attorneys for Plaintiff,*
                                                           *FLSA Collective Plaintiffs,*
                                                           *and the Class*

                                           By:             /s/ *C.K. Lee*
                                                           C.K. Lee, Esq.